**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**BERNARD E. HONEYCUTT,**

       **Plaintiff,**

**v.**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social**
**Security Administration.**

       **Defendant.**

**Case No. 13-cv-1243-DDC**

## MEMORANDUM AND ORDER

Under 42 U.S.C. § 405(g), plaintiff Bernard Honeycutt seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under Title II and Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief seeking judicial review of the Commissioner's decision. (Doc. 18) The Commissioner has filed a brief in opposition (Doc. 24) and submitted the administrative record. (Doc. 10) When plaintiff filed his reply brief (Doc. 27), this matter became ripe for determination. Having reviewed the administrative record and the briefs of the parties, the Court reverses the decision of the Commissioner, orders that judgment shall be entered pursuant to the sixth sentence of 42 U.S.C. § 405(g), and remands the case to the agency for further proceedings consistent with this Order.

**I.      Factual Background and Procedural History**

Plaintiff applied for a period of Social Security Disability ("SSD") benefits under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on August 11, 2009. (R. 29) In both applications, plaintiff alleged disability

beginning on July 31, 2009.  (*Id.*)  The Social Security Administration denied plaintiff's claims on March 31, 2010 (R. 53-61), and again denied them upon reconsideration on September 21, 2010.  (R. 29)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), who held a hearing on July 7, 2011.  (*Id.*)  On September 14, 2011, the ALJ issued a decision denying plaintiff's applications for SSD and SSI benefits because the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act.  (R. 38); 42 U.S.C. §§ 416(i), 423(d), 1382(a)(3)(A).

Plaintiff filed an appeal with the Appeals Council on December 6, 2011.  (R. 22-24)  The Appeals Council denied plaintiff's request for review on May 22, 2012.  (R. 1-3)  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the Commissioner's final decision denying him SSD and SSI benefits.

## II.    Medical History

The administrative record contains (1) emergency room records from Wesley Medical Center, (2) inpatient records from Hunter Health Clinic, (3) physical therapy records from Wesley Medical Center, (4) treatment notes from spinal specialist Dr. Alan Albarracin, (5) consultative examination reports from Dr. Aaron Lewis, (6) consultative examination reports from Dr. Brent Adams, (7) a medical interrogatory and medical source opinion from Dr. Robert Thompson, and (8) a Physical RFC assessment from Dr. Harold Keairnes.

### 1.    Wesley Medical Center—ER Visit

Plaintiff went to Wesley Medical Center on September 29, 2009, when he experienced an onset of neck pain.  (R. 318)  On August 3, he returned to Wesley Medical Center because the pain persisted and he had run out of Lortabs.  (*Id.*)  Plaintiff had no history of neck injury or previous neck problems, but wore a soft cervical collar.  (*Id.*)  Plaintiff exhibited a decreased range

of motion in the neck, but showed no evidence of fracture or dislocation of the cervical spine. (R. 327)  Imaging studies revealed "[m]ultilevel degenerative change within the cervical spine, most significant at C5/C6," resulting in "mild/moderate central canal stenosis and right greater than left neuroforaminal narrowing."  (*Id.*)  The treating physician referred plaintiff to Hunter Health Clinic for continuing care.  (R. 326)

### 2.   Hunter Health Clinic

Plaintiff made visits to Hunter Health Clinic on August 4, 11, and 18 of 2009, and again on September 10, 2009.  (R. 331-34)  Plaintiff described neck pain radiating down his arm, which failed to improve with neck exercises and wearing a cervical collar.  (R. 333)  The treating physician continued to prescribe pain medication and referred plaintiff to Dr. Alan Albarracin, a spine specialist.  (*Id.*)

### 3.   Wesley Medical Center—Physical Therapy Discharge Summary

Plaintiff's physical therapy outpatient progress notes from Wesley Medical Center show that new medication had greatly improved his pain.  (R. at 342)  Plaintiff reported that he had found a new job and planned to return to work as a cook.  (*Id.*)  Plaintiff apparently did not return for physical therapy after September 24, 2009.

### 4.   Dr. Alan Albarracin

Plaintiff visited Dr. Albarracin on November 20, 2009 for pain management.  (R. 367)  Dr. Albarracin prescribed plaintiff Lortab 10 mg.  (*Id.*)  Treatment notes indicate that the medication controlled plaintiff's pain adequately with no adverse side effects.  (*Id.*)  The medication also appeared to improve plaintiff's functional capacity.  (*Id.*)  A physical examination showed some restrictions in range of motion and tenderness and mild muscle spasticity in the right arm. (*Id.*)  The examining physician observed no evidence of sensory or motor deficit.  (*Id.*)

### 5.      Consultative Examination—Dr. Aaron Lewis

Dr. Lewis performed a consultative examination on February 27, 2010.  (R. 344-48)
Plaintiff reported neck pain that radiated to the left-upper extremity, which was aggravated by
coughing and sneezing.  (*Id.*)  Physical therapy had produced only minimal improvement.  (R.
345)  Plaintiff reported that he woke up four times per night due to neck discomfort.  (*Id.*)

Significant findings from the physical examination included no postural abnormalities,
normal gait, normal grip strength, perceived dexterity, and negative Tinel and Phalen.  (R. 346)
Dr. Lewis also noted decreased range of motion of the cervical spine and the lumbar spine—
straight leg raising was limited to 30 degrees on the right and 50 degrees on the left.  (*Id.*)  Plain-
tiff had no asymmetrical reflex, sensory or motor deficits but did have mild to moderate difficul-
ty with orthopedic maneuvers.  (*Id.*)  X-rays showed mild spondylosis at C5-6 and similar
changes at C4-5 while the remaining disc spaces "appear adequately maintained."  (R. 348)

There is one inconsistency in Dr. Lewis' report.  At page two of his report, Dr. Lewis
states "[p]araspinous muscle spasm is not noted."  (R. 346)  But at the conclusion of his report,
Dr. Lewis notes that "[t]here is limited range of motion today *and cervical parspinous muscle
spasm*."  (R. 347) (emphasis added)  The Court does not find this inconsistency to be significant
in light of the ALJ's broader findings.

### 6.      Consultative Examination—Dr. Brent Adams

Dr. Adams performed a consultative examination on November 18, 2010.  (R. 401-05)
Plaintiff again reported pain in his neck and left-upper extremity, rating the pain 9/10 at its worst,
and 6-7/10 at its best.  (R. 403)  Plaintiff also reported that his left arm goes numb in the eve-
nings about three times per week.  (*Id.*)

The physical examination showed that plaintiff could forward flex fully and extend his neck.  (R. 402)  Plaintiff had a positive Spurlings' examination to the left upper extremity, and full lateral gaze to the left and right sides.  (*Id.*)  He exhibited full passive painless range of motion of his shoulders, elbows, and wrists.  (*Id.*)  Dr. Adams recorded 5/5 ratings for plaintiff's finger abduction and adduction, grip strength, wrist flexion and extension, elbow flexion and extension, and shoulder abduction.  (*Id.*)  Dr. Adams did note, however, that plaintiff had "[d]ecreased sensation in the left C6 distribution," but "[o]therwise sensation intact and symmetric C5 through T1 bilaterally."  (*Id.*)  Plaintiff's reflexes were symmetric.  (*Id.*)

Dr. Adams examined an MRI of plaintiff's cervical spine, though he acknowledged it was "a fairly poor MRI."  (*Id.*)  The MRI appeared to show a left paracentral disc herniation, which was "impinging on the nerve root" and appeared "to be fairly significant in nature."  (*Id.*)  Dr. Adams also noted "degenerative discs at every other level in [plaitiff's] cervical spine."  (R. 404)  "Specifically at the C3-C4 level [plaintiff] has a central protrusion" that is "fairly small in nature" and "does not appear to be impinging upon any of the nerve roots."  (*Id.*)  Dr. Adams felt that there was a "fairly good" likelihood that a "simple ACDF at the C5-C6 level" would relieve plaintiff's upper extremity pain.  (*Id.*)  Dr. Adams placed plaintiff on the surgery schedule and scheduled a preoperative visit.  (*Id.*)

### 7.    Postponed Surgery

Records from Hunter Health Clinic indicate that plaintiff was scheduled for surgery on January 28, 2011, but that plaintiff postponed the surgery after his girlfriend had a stroke.  (R. 407)  Plaintiff reported that he intended to reschedule the surgery, but the record does not indicate that he did so.  In the meantime, plaintiff continued follow-up visits to Dr. Albarracin, who was "keeping him afloat."  (*Id.*)  Dr. Albarracin's notes show that medication had controlled

plaintiff's pain adequately and "enhanced and maintained" his capacity for various activities.  (R. 412, 417)  Plaintiff reported only one side effect—constipation, but noted that it was controlled.  (R. 412, 417)  Plaintiff asked to continue Lortab at the same dose.  (R. 412, 417)

### 8.    Medical Interrogatory—Dr. Robert Thompson

After the ALJ's hearing, the agency submitted plaintiff's medical records and medical interrogatories to Dr. Thompson.  (R. 418-29)  The agency asked for Dr. Thompson's professional opinion about plaintiff's impairments and abilities.  (R. 418)  Dr. Thompson also completed a medical source statement about plaintiff's ability to do work-related activities.  (R. 435-40)  In his medical source statement, Dr. Thompson concluded that plaintiff was capable of performing a range of light work, specifically:  lifting/carrying up to twenty pounds occasionally and ten pounds frequently; sitting eight hours in an eight-hour work day, including three hours continuously; standing eight hours in an eight-hour workday, including three hours continuously; and walking eight hours total in an eight hour workday, including three hours continuously.  (R. 435-40)  Dr. Thompson also concluded that plaintiff could continuously handle, finger and feel; frequently reach; occasionally push and pull; but never reach overhead.  (R. 436-37)  In addition, plaintiff could frequently balance, stoop and kneel; occasionally crouch; but could never crawl or climb ladders or scaffolds.  (R. 438)

Dr. Thompson found that plaintiff's condition did not warrant any environmental limitations.  (R. 439)  The ALJ determined that this conclusion did not take into account plaintiff's reports that his pain worsened with exposure to cold, changes in weather, and any shaking of his head.  (R. at 34)  Accordingly, the ALJ found that plaintiff should avoid exposure to temperature extremes, vibration, and other work hazards.  (*Id.*)  Except for Dr. Thompson's conclusion about environmental limitations, the ALJ gave significant weight to Dr. Thompson's report.  (R. 36)

### 9.    RFC Assessment—Steven Benjamin

The ALJ submitted an interrogatory to Steven Benjamin, a vocational expert, to get his opinion about whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience, and RFC.  (R. 291)   Mr. Benjamin responded that, given the above factors, plaintiff could perform occupations requiring a light exertional level, such as a solderer in a production line.  (R. 301)  Plaintiff could also perform work at a sedentary exertional level, such as a food and beverage order clerk or document preparer.  (*Id.*)  According to Mr. Benjamin, each of these occupations exists in significant numbers in the regional, state, and national economy.  (*Id.*)

## III.    Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing."  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor

substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See*, *e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

IV.     **Disability Determination**

Claimants seeking Social Security disability benefits carry the burden to show they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general,[1] the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)).  As summarized by the Tenth Circuit, this familiar five-step process proceeds as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g).  The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an

---

[1]     The definition differs for minors and some blind individuals.  *See* 42 U.S.C. §§ 423(d)(1)(B) (definition for some blind individuals); 1382c(a)(3)(C)(i) (definition for individuals "under the age of 18").

alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## V.    Analysis

Plaintiff alleges that the Commissioner erred in three ways. He argues that (1) the ALJ erroneously evaluated plaintiff's cervical spine impairment at Step 4 of the sequential process outlined in 20 C.F.R. § 404.1520, (2) the ALJ ignored and misrepresented facts in the record that support a finding of [disability], and (3) the Appeals Council failed to consider the additional medical evidence plaintiff submitted with his request for reconsideration to the Appeals Council. (R. 311) The Court addresses each argument in turn.

### 1.    ALJ's Credibility Analysis

Plaintiff concedes the ALJ's findings that (1) he was not "presently engaged in substantial gainful activity," (2) he had a "medically severe impairment," but (3) his impairment did not meet or medically equal the severity of one of the impairments listed in the appendix to 20 C.F.R. § 405. (Doc. 18 at 4; R. 32) Having made these determinations, the ALJ properly proceeded to Step 4 of the sequential evaluation. 20 C.F.R. §§ 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv).

At Step 4, the ALJ determines whether the claimant's alleged disability prevents him from performing his past relevant work. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv). These regulations track the

Tenth Circuit's analysis for determining whether a claimant has shown disabling pain (the "credibility framework"):

> If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." At this stage, the decision maker takes the subjective allegations of pain as true in determining whether they are reasonably related to the proven impairment. He does not evaluate the claimant's credibility. If the nexus between impairment and pain alleged is insufficient, the claimant cannot receive benefits based upon disabling pain. If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain. Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain.

*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (S.S.A July 2, 1996).

Plaintiff argues that the ALJ improperly determined that objective medical evidence did not support his allegation of disabling pain at the first stage of this inquiry. Instead, the ALJ should have determined initially whether his impairment is one that reasonably could cause the alleged pain. Only after making this initial determination can the ALJ "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, at *2 (S.S.A July 2, 1996). "For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* Plaintiff argues that the ALJ "prejudged" the relationship between objective factors and the alleged symptoms, which precluded the ALJ from properly evaluating subjective factors as required by § 404.1529(c).

11

(Doc. 18 at 8)  Plaintiff argues that the ALJ instead should have weighed objective *alongside* subjective factors rather than pit his initial prejudgment against the subjective factors.  (*Id.* at 4)

To the contrary, the ALJ clearly followed the proper credibility framework to evaluate plaintiff's alleged pain.  (R. 33)  The ALJ first considered whether plaintiff's physical impairment could reasonably be expected to produce his pain, and found that it could.  (*Id.*)  The ALJ then proceeded to the next step of the credibility framework—determining the extent that the "intensity, persistence, and functionally limiting effects" of plaintiff's alleged symptoms affect his ability to work.  (*Id.*); SSR 96-7p at *1.

Here, the ALJ first canvassed the medical evidence and concluded that it did "not document a level of severity consistent with [plaintiff's] allegations of disability."  (R. 33-35)  But the ALJ recognized that the medical evidence alone does not resolve this stage of the credibility analysis, and that subjective credibility factors "can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone."  (R. 35)  The ALJ then the considered subjective factors described in 20 C.F.R. §§ 404.1529(c) and 416.929(c), such as plaintiff's activities of daily living, reported intensity of pain, efficacy of pain medication, and other aggravating factors. (R. 35-37)   Only after considering all this evidence— subjective and objective—did the ALJ conclude that plaintiff's level of pain did not preclude a RFC for a light range of work.  (R. 37-38)  Thus, the ALJ properly considered all appropriate evidence to evaluate the credibility of plaintiff's pain allegations.

## 2.    Substantial Evidence for the ALJ's RFC Finding

After considering the disabling effects of plaintiff's pain under the credibility framework, the ALJ concluded that plaintiff retained the RFC to perform a reduced range of light work.  (R. 32-37)  Specifically, the ALJ found that plaintiff could occasionally climb, balance, stoop, kneel,

crouch, push, and pull; but he could not crawl, reach overhead, or climb ropes, ladders, or scaf-folds.  (*Id.*)  The ALJ also found that plaintiff must also avoid concentrated exposure to extreme temperatures, vibration, and work hazards.  (*Id.*)  Plaintiff alleges a number of errors in the ALJ's RFC determination.  (Doc. 18 at 8-12)

### a.    Effectiveness of Pain Medication

Plaintiff argues the ALJ erred by determining that medication had successfully controlled plaintiff's pain.  Specifically, plaintiff notes that he told another doctor in April 2011 that Dr. Albarracin was merely "keeping him afloat" while he awaited surgery.  (Doc. 18 at 10; R. 407)  Dr. Albarracin's treatment notes provide a more detailed picture.  As the ALJ discussed, Dr. Al-barracin specifically found in April and June 2010 that plaintiff's functional capacity was "en-hanced and maintained" with medication, and that there were no plans for additional interven-tion.  (R. 34, 360, 362)  In August and September 2010, plaintiff reported "satisfactory" pain control and daily activities, and requested to continue his current medication.  (R. 358, 380)  In February 2011, plaintiff again reported doing "fairly well" with his current treatment regimen. (R. 376)

Plaintiff argues that the ALJ overlooked that plaintiff consistently reported pain that was "daily, persistent, dull to sharp, throbbing, affecting ADLs and sleep," and "relief—some w/rest, partially w/meds."  (R. 358, 360, 362, 380)  The ALJ acknowledged that plaintiff experienced persistent pain and limited his activities accordingly.  (R. 436)  Reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's conclusion that medication controlled plaintiff's pain to an extent consistent with the RFC finding.

### b.      Side Effects of Pain Medication

Plaintiff contends the ALJ erred by concluding that plaintiff's pain medication had no limiting side effects.  (Doc. 18 at 11; R. 36)  Plaintiff argues that the ALJ failed to account for the addictive nature of narcotic pain medication or its tendency to cause drowsiness.

Plaintiff does not contend, nor does the record support, that plaintiff was addicted to the pain medication.  To the contrary, Dr. Albarracin consistently noted that there was "no indication of aberrant behavior or medication diversion."  (R. 358-65, 375-384)  The ALJ need not address impairments that do not exist in the evidentiary record.  *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The only record evidence about any side effects of the Lortab comes from the transcript of the administrative hearing.  (R. 41-73)  When asked if plaintiff experienced "any side effects from [the Lortab]," plaintiff responded "No it just—it makes me sleepy.  I sleep a lot."  (R. 53-54)  The ALJ correctly found no evidence that plaintiff reported sleepiness to Dr. Albarracin.  (R. 33, 36)  In his brief, plaintiff argues that he did not report sleepiness to doctors because he did not understand it to be a side effect of Lortab.  (Doc. 18 at 11)  However, plaintiff knew to report sleepiness when asked at the hearing about side effects.  (R. 53-54)  Based on this discrepancy, the ALJ reasonably concluded that the record does not support that plaintiff suffered side effects that would undermine an RFC finding.

### c.      Limitations of Daily Activities

 Plaintiff next argues that the ALJ did not make any findings about whether or why plaintiff's daily activities were limited.  (Doc. 18 at 15)  The ALJ considered plaintiff's testimony that he spends most of his time (20 of 24 hours) lying down on the couch or in bed, and that he does not do household chores because he cannot stand long enough.  (R. 35)

14

However, the ALJ found that the record did not support that plaintiff's daily activities were as limited as he alleged for three reasons.  First, the ALJ noted that "that the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty."  (*Id.*)  The ALJ again cited to Dr. Albarracin's notes, which indicated enhanced and "maintained ADLs/functionality with medication."  Second, the ALJ found that even if plaintiff's daily activities were "truly as limited as alleged, it is difficult to attribute that degree of limitation to [plaintiff's] medical condition, as opposed to other reasons."  (*Id.*)  Third, the ALJ concluded that the other evidence, particularly the interrogatories and medical source statement of Dr. Thompson, outweighed plaintiff's own reports of limitations.  (R. 36)

Giving particular weight to Dr. Thompson's medical source statement of plaintiff's ability to do work related activities, the ALJ noted that the record did not contain any opinions from treating or examining physicians indicating that the plaintiff "is disabled or has limitations" that would preclude an RFC finding.  (*Id.*)  The ALJ found Dr. Thompson's assessment more consistent with the medical records, and therefore gave it greater weight than plaintiff's own account of his limitations.  (*Id.*)  Thus, the record contains substantial evidence to support the ALJ's determination that plaintiff was not limited in daily activities.

### d.    Other Errors

Plaintiff alleges a number of miscellaneous errors in the ALJ's weighing of the evidence, including that (1) the ALJ cited plaintiff's return to work in August 2010 as evidence that medication controlled his pain adequately without noting that the ALJ found this to be an unsuccessful work attempt; (2) the ALJ failed to resolve inconsistencies in Dr. Lewis' report about the presence of paraspinous muscle spasm; and (3) the ALJ failed to consider plaintiff's willingness to undergo surgery in the credibility analysis.  (Doc. 18 at 8-9, 16)

To plaintiff's first argument, the ALJ considered plaintiff's attempted return to work and noted that it was an "unsuccessful work attempt as it ended after a relatively brief period due to apparent medical reasons." (R. 32)  The ALJ also determined that plaintiff could not perform past work, either as a cook or a home health aide. (R. 37)  The ALJ mentions in the credibility analysis plaintiff's intention to return to work without noting that it had failed.  However, the ALJ did so only to provide context for plaintiff's reports that medication had improved his pain, and the ALJ's credibility determination did not rely on the success of this work attempt in any way. (R. 33)  Thus, the ALJ properly considered plaintiff's brief return to work as a cook a failed work attempt.

Plaintiff correctly notes that there is an inconsistency in Dr. Lewis' report.  At page two of his report, Dr. Lewis states, "no paraspinous muscle spasm is noted." (R. 436)  But in the conclusion of the report, Dr. Lewis notes that there was "limited range of motion today and cervical paraspinous muscle spasms." (R. 347)  Plaintiff faults the ALJ for failing to acknowledge or resolve this conflict in Dr. Lewis' report. (Doc. 18 at 9)  However, the important findings in Dr. Lewis' consultative examination are his determinations about plaintiff's physical limitations. (R. 35)  Plaintiff does not describe how this inconstancy bears on Dr. Lewis' opinions about physical limitations or how this inconsistency renders the ALJ's RFC finding unsupported by evidence.

Plaintiff also argues that the ALJ failed to consider plaintiff's willingness to undergo surgery at the recommendation of his doctors. (Doc. 18 at 16)  Plaintiff cites to an unpublished case, *Gross v. Apfel*, No. 98-1094, slip op. at 24 (D. Kan. Jan. 12, 2000), which considered a plaintiff's willingness to undergo two surgeries as a factor supporting the credibility of plaintiff's alleged disabling pain. (Doc. 18 at 16)  Again, contrary to plaintiff's argument, the ALJ consid-

ered the doctor's recommendation for surgery explicitly.  (R. 34)  The ALJ noted that plaintiff

had scheduled surgery in January 2011 but postponed the surgery after his girlfriend had a

stroke.  (R. 34)  The present case is distinguishable from *Gross* because plaintiff's pain was suf-

ficiently controlled to permit him to postpone the surgery, albeit under unfortunate circumstanc-

es.  The ALJ did not need to consider plaintiff's willingness to undergo surgery because plaintiff

did not go through with the surgery during the time period covered by the record.  In addition,

the ALJ found that medication was "successful in keeping [plaintiff's] pain under adequate con-

trol (even without the surgery) and allows him to complete his activities of daily living satisfac-

torily."  (R. 35)

In sum, plaintiff has explained why he would have weighed the evidence differently, but

has not established error in the ALJ's determination.  "The possibility of drawing two incon-

sistent conclusions from the evidence does not prevent an administrative agency's findings from

being supported by substantial evidence."  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

Thus, even if plaintiff has established that the evidence is susceptible to conflicting interpreta-

tion, the Court does not find error because substantial evidence still supports the ALJ's decision.

*See id.*

### 3.    Exclusion of Plaintiff's New Evidence

In February 2013, plaintiff presented additional medical evidence to the Appeals Council,

which he attached to his brief as Exhibit A.  (Doc. 18-1)  Exhibit A comprises records from Dr.

Brent Adams about a successful cervical fusion operation that plaintiff received in September

2012.  (Doc. 18-1)  The surgery appears to have had a favorable effect on plaintiff's pain.  (Doc.

18 at 16; Doc. 18-1 at 7, 9)  The Appeals Council did not include the new evidence in the record

nor did it respond to the request by plaintiff's counsel to include the evidence in the record. (Doc. 18 at 5)

The Appeals Council must consider additional evidence it receives if the evidence is (1) "new," (2) "material," and (3) "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The Commissioner argues that the Appeals Council properly excluded this evidence because it is unrelated to the relevant time period in this case. (R. 2) ("This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 13, 2011.") In addition, the Commissioner argues the new evidence is not material because it would not have reasonably changed the ALJ's decision if it were before him. *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("Evidence is material if 'the Secretary's decision might reasonably have been different had the [new] evidence been before him when his decision was rendered.'") (alteration in original) (quoting *Cagle v. Califano,* 638 F.2d 219, 221 (10th Cir. 1981)).

Plaintiff contends that the surgical records are chronologically relevant because "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairment" existing before that date. (Doc. 27 at 13)*; Baca v. Dep't of Health & Human Servs*., 5 F.3d 476, 479 (10th Cir. 1993) (citing *Gold v. Sec'y of Health, Educ. & Welfare,* 463 F.2d 38, 42 (2d Cir. 1972)). The Court agrees. The surgical procedure reflected in the new record is the same procedure plaintiff originally had scheduled in January 2011. (R. 414; Doc. 18-1 at 28) Preoperative MRI results show the same bulging discs at the same location as plaintiff had during the previous years. (Doc. 18-1 at 33) Moreover, Dr. Adams noted that plaintiff's condition "has not appreciably changed" when compared to examinations conducted before the hearing.

18

(Doc. 18-1 at 44)  Thus, the Court concludes that the new evidence is chronologically relevant because it relates to the same impairments that existed during the time period for which the ALJ denied benefits.

Even if new evidence is chronologically relevant, it cannot serve as the basis for remand unless it is also "material."  *See* 20 C.F.R. § 404.970(b).  New evidence is material if it might reasonably have changed the ALJ's decision had it been before him.  *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (citing *Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981)).  Plaintiff argues the success of the surgery in alleviating his pain bolsters his claim that his pain was attributable to a medically verifiable cause.  (Doc. 27 at 14-15)  The Commissioner argues that the new evidence is nevertheless immaterial because the eventual success of surgery does not undermine the ALJ's conclusion that medication had controlled plaintiff's pain in the meantime.  (Doc. 24 at 14)

The Court finds that the new evidence contained in Exhibit A is material.  The ALJ relied on two key facts in finding that plaintiff's pain did not preclude him from performing work existing in significant numbers in the national economy:  (1) that plaintiff did not report his alleged limitations in daily activities to treating physicians, and (2) that it is difficult to attribute plaintiff's limitations to his medical condition, as opposed to "other factors" in light of the medical evidence in the record.  (R. 35)  The surgical records in Exhibit A are relevant to both of these findings.  In particular, the fact that the surgery appears to have treated plaintiff's pain successfully is objective medical evidence that plaintiff's pain was attributable to his spinal impairment.  Because the new evidence arguably rebuts some of the ALJ's key findings, a reasonable possibility exists that the new evidence would have changed the outcome.  Thus, the Court concludes that the Appeals Council should have considered the new evidence.

The Tenth Circuit has explained the applicable law when a claimant provides new evidence to the Appeals Council:

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision.  If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard.  Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir. 2004) (citations omitted).  The exclusion of qualifying new evidence "constitutes substantial legal error necessitating a remand." *Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. Apr. 23, 1996).  Accordingly, the Court reverses the decision of the Appeals Council excluding Exhibit A from the record.  The Court remands the case to the Commissioner for further proceedings consistent with this opinion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability and Supplemental Security Income benefits is **REVERSED** and judgment shall be entered pursuant to the sixth sentence of 42 U.S.C. § 405(g) **REMANDING** the case to the agency for further proceedings consistent with this opinion

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**